No. 23-3578

---

**IN THE UNITED STATES COURT OF APPEALS FOR**

**THE NINTH CIRCUIT**

**TANMAY KAR, an individual, &**

**PROFITPAY TECHNOLOGIES, INC., a corporation,**

Appellants-Plaintiffs,

v.

**JAYESH PATEL, ET AL.,**

Appellees-Defendants,

On Appeal from the United States District Court for the

Northern District of California

Case No. 4:23-cv-02064-YGR Judge Yvonne Gonzalez Rogers

Defendants' State Case Removal Case No. 23CV418087

from SF County Superior Court

**APPELLANTS' OPENING BRIEF**

**RESHMA KAMATH**
CAL. BAR NUMBER 333800 LAW OFFICE OF RESHMA KAMATH
700 EL CAMINO REAL SUITE 120, #1084, MENLO PARK, CA 94025
PHONE: 650 257 0719 | E-MAIL: RESHMAKAMATH2021@GMAIL.COM
*COUNSEL FOR APPELLANTS TANMAY KAR, AN INDIVIDUAL,*
*& PROFITPAY TECHNOLOGIES, INC., A CORPORATION*



=====================================================

## CERTIFICATE OF CORPORATE DISCLOSURE

=====================================================

Pursuant to *Federal Rule of Appellate Procedure Rule* 26.1, Appellant Tanmay Kar is a natural person. Appellant ProfitPay Technologies, Inc. is a California corporation, where the latter, Plaintiff ProfitPay Technologies, Inc. does not have any corporate parent affiliations.

**DATED: March 01, 2024**

**LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath,
Counsel for Appellants & Plaintiffs TANMAY KAR, AN INDIVIDUAL; PROFITPAY TECHNOLOGIES, INC., A CORPORATION

**RESHMA KAMATH**
CAL. BAR NUMBER 333800
LAW OFFICE OF RESHMA KAMATH
700 EL CAMINO REAL SUITE 120, #1084, MENLO PARK, CA 94025 PHONE: 650 257 0719 | E-MAIL: RESHMAKAMATH2021@GMAIL.COM



2

==================================================

## TABLE OF CONTENTS

==================================================

**INTRODUCTION**…………………………………………………15

**JURISDICTIONAL STATEMENT** ……..………………………..17

**ISSUES PRESENTED**……..……………………………………17

**SUMMARY OF ARGUMENT** ………………………………..19

**STATEMENT OF FACTS** …………………………………..........21

    PROCEDURALLY ……………………………….....21

    SUBSTANTIVELY ……………………………….29

    YEAR 2021 ……………………………………….32

    YEAR 2022 ………………………………………..35

    YEAR 2023 ……………………………………….38

**STANDARD OF REVIEW**……..…………………… …..………44

    SECURITIES FRAUD LEAVE TO AMEND IS REVIEWED

UNDER ABUSE OF DISCRETION STANDARD OF REVIEW….….44

    PSLRA AND SLUSA ARE REVIEWED UNDER DE NOVO

STANDARD OF REVIEW……………………………………….46

**ARGUMENT**….…………………….……………………51



3

**I. PSLRA, RULE 15 AND HEIGHTENED PLEADING STANDARD FOR SECURITIES FRAUD REQUIRED ATLEAST A SECOND "BITE AT THE APPLE"**…….………………………..51

**II. INTER-PLAY BETWEEN SLUSA, PSLRA & SECURITIES FRAUD**...................…......................................68

**III. PSLRA AND FEDERAL RULES OF CIVIL PROCEDURE RULE 9 B**………………….……………………………..78

A.     *SEC Rule 10b-5(b) Claim*………...79

*i. Defendants' Material Misstatements or Omissions ……………………………………..80*

*ii. Defendants' Scienter under the SLUSA required the extreme liberality of leave to amend……………81*

*iii. Shareholders' Reliance…………………84*

*iv. Shareholders' Loss Causation………..86*

**IV. DEFENDANTS ' SCHEME LIABILITY FOR A PONZI SCHEME WAS WELL-PLED** ……………………………...88

**CONCLUSION**……….…………………………….……..92

**CERTIFICATE OF COMPLIANCE** ………………………….94

**CERTIFICATE OF SERVICE**…………………………....96&98



===================================================

## **TABLE OF AUTHORITIES**

===================================================

### *Cases*

AFL-CIO v. Mesker Bros. Indus., Inc., 457 F.2d 91, 94 (8th Cir. 1972)..58

Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990)…..43, 55

AmerisourceBergen Corp. v. Dialvsist W. Inc., 465 F.3d 946, 949 (9th Cir. 2006)……………………………………………….…..........56

Amgen Inc. v. Conn. Ret. Plans & Tr. Funds (2013) 568 U.S. 455……..51

Arik v. DVH Hosp. All., LLC ………………………….…….…….62

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) ……………………………….……………………....47

Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 967……………..44

Basic Inc. v. Levinson, 485 U.S. 224, 245, 108 S. Ct. 978, 99 L. Ed. 2d 194. …………………………………….………….……..……….…...52



Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ……………………………………………………...47

Binder v. Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999) ………………85

Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.) …………………………………………………………………………44

Broudo v. Dura Pharm., Inc., 339 F.3d 933, 937 (9th Cir.2003) (citation omitted) ………………………………………………………………*passim*

Burns v. Prudential Securities, 116 F. Supp.2d 917, 920 (N.D. Ohio 2000) ……………………………………………………………………………73

Cal. State Emps. Ass'n v. Bogart (E.D. Cal., Feb. 2, 2015, No. 2:14-CV-02494 JAM-KJN)……………………………………………..……………….63

Carol Gamble Trust 86 v. E-Rex, Inc. (9th Cir. 2004) 84 F. App'x 975, 979 ……………………………………………………………………..75, 76

Chambers v. Nationwide Mut. Ins. Co. *(*N.D. Ohio, Feb. 8, 2021, CASE NO.: 1:19CV2601)……………………………………………………....62

Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996) …………………….58

Cousins v. Lockyer, 568 F.3d 1063…………………………………..47



Cqfasso v. Gen. Dynamics Ch Sys., 637 F.3d 1047, 1055 (9th Cir. 2011) …………………………………………………………….49

DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)…...57

Denman v. City of Tracy (E.D. Cal., Oct. 25, 2012, No. CIV 2:11-cv-0310-GEB-JFM)……………...……………………………………..…..64

Desai v. Deutsche Bank Sec. Ltd., 573 F.3d 931, 939 (9th Cir. 2009) ….84

Dougherty v. City of Covina, 654 F.3d 892, 897 (9th Cir. 2011) ……… 45

Dudek v. Prudential Sec., Inc. [(8th Cir. 2002)] 295 F.3d 875, 877....)....69

Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005)………….. *passim*

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ……………………………………………..……...*passim*

Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 937-38 (9th Cir. 2003) ……………………..…….49

Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 810 (2011)……………………………………………………..……..78, 84

Ernst Ernst v. Hochfelder, 425 U.S. 185, 193-194 n. 12 (1976) ……….80

Falkowski v. Imation Corp. (9th Cir. 2002) 309 F.3d 1123, 1128 ………………………………………………………………...*passim*



Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir.2013). 47

Feitelberg v. Credit Suisse First Boston LLC (N.D.Cal. Oct. 24, 2003, No. C 03-3451 SC) 2003 U.S. Dist. LEXIS 19116, 2003 WL 22434098, *1, 2…………………………………………………………..………..72

Flores v. California Department of Corrections and Rehabilitation 224 Cal.App.4th 199 (Cal. Ct. App. 2014) …………………….……….……..43

Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) …...55

*Frank v. Cnty. of Humboldt (N.D. Cal., June 18, 2014, No. C 13-0089 MMC)…………………………………………………………………64*

Freeman Investments, L.P. v. Pacific Life. Ins. Co., 704 F.3d 1110, 1114–15 (9th Cir.2013) ……………………….……….……….……..73

Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799, 35 Cal.Rptr.2d 418, 883 P.2d 960 …………………….……….……….………..46

Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) ………….48

Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002 …………….43

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014)…………….……….……….………….……….……..53, 70



Holly v. Alta Newport Hosp., Inc. (C.D. Cal. 2020) 612 F. Supp. 3d 1017)

…………………………………………………………………….64

Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973) …………..57

Hurn v. Ret. Fund Trust of the Plumbing, Heating Piping Indus. of S. Cal.,

648 F.2d 1252, 1254 (9th Cir. 1981) …………………………………..55

Kenneth Rothschild Trust v. Morgan Stanley Dean Witter (C.D. Cal. 2002)

199 F.Supp.2d 993, 997 …………………………………………..…..69

Kinney v. State Bar of Cal. (9th Cir., Jan. 19, 2017, No. 15-55329)……..64

Klamath-Lake Pharm. Ass'n v. Klamath Med. Sen7. Bureau, 701 F.2d

1276, 1292-93 (9th Cir. 1983) ……….…………………….…...*passim*

Lentell v. Merrill Lynch Co., Inc. (2d Cir. 2005) 396 F.3d 161………...67

Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940 (9th Cir.

2005)...............................................................................................*passim*

Lloyd v. CVB Fin. Corp., 811 F.3d 1200, 1209 (9th Cir. 2016) ……..86

Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (

9th Cir. 1999) ………………………………………………………….44

Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363, 368 (5th

Cir. 2001) ……………………………………………………………57

Madden v. Cowen Co. (9th Cir. 2009) 576 F.3d 957 ……………...68, 70



Manzarek v. St. Paul Fire Marine Ins. Co., 519 F.3d 1025, 1030 (9th Cir. 2008) ………….…………….………….………….………….………..48

*Martinez v. City of W. Sacramento (E.D. Cal., Feb. 4, 2019, No. 2:16-cv-02566-TLN-EFB)*…………………...………….………….………….…..63

Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37-38, 131 S. Ct. 1309, 179 L. Ed. 2d 398, 409 …………………….…………….………….…...52

Matsuura v. Alston & Bird, 166 F.3d 1006, 1008 n.3 (9th Cir.), opinion amended on denial of reh'g, 179 F.3d 1131 (9th Cir. 1999) …………….46

McCabe v. Ernst & Young, LLP., 494 F.3d 418, 425-26 (3d Cir. 2007) ………………….…………….………….………….………….……...86

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 81-82, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006) ……………...……….……..72

Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1068 (9th Cir. 2008).   …………………….………….………….………...............83

Miller v. Yokohama Tire Corp. (9th Cir. 2004) 358 F.3d 616…….……...62

Nasser v. Julius Sammann Ltd. (S.D. Cal., Aug. 14, 2017, Case No.: 17-cv-0863-BTM-MDD)…………….……….……….………….………….… 63



In re Netflix, Inc., Securities Litigation (N.D. Cal., Jan. 17, 2014, No. 12-00225 SC)…….….….…….…..…….….…….….……..….…….…...64

Novak v. Kasaks, 216 F.3d 300, 307-10 (2d Cir. 2000) …………….....66

Nutrition Distribution, LLC v. Enhanced Athlete, Inc. (E.D. Cal., Feb. 14, 2018, No. 2:17-cv-01491-TLN-KJN) …….….…….…...…….….……….63

Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal., 730 F.3d 1111, 1119 (9th Cir. 2013) …………….….…….…….…...87

Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) …………….…….….…….…….….…….…….…….…..55, 77

Pension Scheme v. First Solar Inc., 881 F.3d 750, 753 (9th Cir. 2018) …………….….…….…….…….….…….…….….……..49

Pivonka v. Allstate Ins. Co. (9th Cir. 2014) 558 F. App'x 756…….…….…….…...…….….…….….…….…….…….…..63

Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991)…….45

Prager v. Knight/Trimark Group Inc., 124 F. Supp.2d 229, 233 (D.N.J. 2000) …………….…….….…….………………………73

Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1218 (9th Cir.2009) …………….….…….…….….………………..73



Purdum v. Wolfe (N.D. Cal., Jan. 15, 2014, No. C-13-04816 DMR)…..64

Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc. [(11th Cir. 2002)] 292 F.3d 1334, 1340....) ……………………………………………………82

Rolf v. City of San Antonio, 77 F.3d 823, 828-29 (5th Cir. 1996) ……...70

Ross v. A.H. Robins Co., 607 F.2d 545, 558 (2d Cir. 1979) …………....79

S.E.C. v. Loomis, 969 F. Supp. 2d 1226, 1237 (E.D. Cal. 2013)……....102

Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ……………………………………………………....71

See Lowrey v. Tex. A M Univ. Sys., 117 F.3d 242, 245 (5th Cir. 1997)……………………………………………………………..57

Silicon Graphics Inc. Securities Litigation v. MeCracken, et al., 183 F.3d 970, 975 (9th Cir. 1999)………………...…………………...*passim*

Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) ……………………………………………………………44

Snapkeys , Ltd. v. Google LLC (N.D. Cal., May 17, 2021 , No. 19-cv-02658- LHK (VKD))……………………………………………..62

Steinhebel v. Los Angeles Times Communications , LLC (2005 ) 126 Cal.App.4th 696, 704, 24 Cal.Rptr.3d 351. ……………………………46



Tellabs, Inc. v. Makor Issues Rights, Ltd., 551 U.S. 308, 314, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ……………………………………..49

TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976))………….79

United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101 ……………………………..46

Utterkar v. Ebix, Inc. (N.D. Cal., Aug. 25, 2015, Case No.14-CV-02250-LHK) ……………………………………………………………65

Vantive Corp. Sec. Litig., 283 F.3d at 1097 ………………………….43

Zemola v. Carrington Tea Co. (S.D. Cal., Jan. 24, 2018, Case No.: 17cv760-MMA (KSC))……………………………………………..63

Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009), ………………………………………………………………..79

### *Statutes*

15 U.S.C. § 77a et seq……………………………………*passim*

15 U.S.C. § 78a……………………………………. *passim*

15 U.S.C. § 78bb(f)…………………………………..*passim*

28 U.S.C. § 1291…………………………………….17

28 U.S.C. § 1331…………………………………….17



Securities Act of 1933 [(1933 Act)]…………………………………74

Securities Exchange Act of 1934 §10(b) 17 C.F.R. § 240.……......*passim*

Securities Litigation Uniform Standards Act of 1998 (SLUSA)…*passim*

Private Securities Litigation Reform Act of 1995 (PSLRA)……..*passim*

*Rules*

Federal Rule of Civil Procedure Rule 9(b) ……………………… *passim*

Federal Rule of Civil Procedure Rule 12(b)(6) …………………*passim*

Federal Rule of Civil Procedure Rule 15…………………………*passim*

*Miscellaneous*

3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974)………67

Securities Litigation Uniform Standards Act of 1997: Hearing on S.

Before the S. Comm. on Banking, Housing, and Urban Affairs,

Subcomm. on Securities, 105th Cong. 48 (Oct. 29, 1997)……..………73



## APPELLANTS' OPENING BRIEF

--------------------------------------------------------------------------------------

## INTRODUCTION

================================================

Appellants and Plaintiffs ProfitPay Technologies, Inc. ("ProfitPay") and Mr. Tanmay Kar ("Kar") (*collectively*, "Appellants") respectfully submit the Appellants' Opening Brief based on the following considerations:

Appellants' allegations had met, or would have met, the heightened p leading standard - of *Federal Rule of Civil Procedure Rule* 9(b), the PSLRA , and the SEC Act Rule 10b-5(b) - were leave to amend be liberally and freely granted under *Federal Rule of Civil Procedure Rule* 15 for a second "bite-at-the-apple" of the securities fraud claim against Defendants. 4-ER-230.

Were leave to amend Appellants' securities fraud claim be liberally granted to re-plead with particularity and specificity Securities Fraud in a third-amended complaint - Appellants had or could have sufficiently alleged with additional proffered evidence an (i) actionable misstatement or



15

omission and (ii) a strong inference of scienter while (iii) establishing reliance and (iv) demonstrating loss causation against Defendants for securities fraud and investment violation. 4-ER-30-35.

Thus, Appellants' SEC Rule 10b-5(b) claim should **not** have been dismissed with prejudice with just a "single bite at the apple" in the second-amended complaint ("SAC"). 2-ER-59. *Eminence Capital, LLC v. Aspeon, Inc.*, 316F.3d 1048, 1052 (9th Cir. 2003). The first iteration of the complaint, i.e., the First-Amended Complaint, was dismissed on jurisdictional grounds for lack of diversity. 1-ER-2.

Based on Appellants' reasoning stated in subsequent paragraphs of this Opening Brief, Appellants request the Ninth Circuit Court of Appeals to reverse and vacate the district court ruling, both on equitable 3-ER-23 and substantive grounds, considering the shareholders' investments, and for Appellants to particularly amend the securities fraud claim against Defendants for a second "bite at the apple." *Eminence,* 316F.3d, 1052 (9th Cir. 2003).

///

///



16

================================================

## JURISDICTIONAL STATEMENT

================================================

The basis for jurisdiction for (i) the district court referencing the specific statute conferring jurisdiction, 28 U.S.C. § 1331 15 U.S.C; (ii) the basis for jurisdiction for the Court of Appeals, with reference to the specific statute conferring jurisdiction, 28 U.S.C. § 1291, Securities Litigation Uniform Standards Act of 1998 (SLUSA) (15 U.S.C. § 78bb(f) and Private Securities Litigation Reform Act of 1995 (PSLRA); (iii) the date of entry of the judgment, October 12, 2023, and the November 17, 2023 appeal is timely; and (iv) the appeal is from a final order or judgment that disposes of all parties' claims.

================================================

## ISSUES PRESENTED

================================================

-Whether the Fed. *Rul. Civ. Proc. Rul.* 15 <u>extreme liberality</u> standard of <u>leave to amend</u> as to the heightened-pleading <u>securities fraud</u> claim was applied;



17

*-or* if offered, a second "bite of the apple" would amendment of the securities fraud cause of action with Appellants Kar and ProfitPay's additionally proffered evidence likely cure any defects of securities fraud's heightened pleading, *or* would the amendment be futile.

-Whether the elements of the Securities & Exchange Act Rule 10b5, i.e., scienter, loss causation, reliance, material misrepresentation and omission, were adequately pled;

- or <u>would have been corrected</u> and pled with particular and specific factual pleading allegations were leave to amend be liberally offered for the <u>trial-and-error</u> test for securities fraud.

-Whether the district court erred in failing to undertake an inquiry in considering the "<u>complaint in its entirety,</u> as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, <u>documents incorporated into the complaint by reference,</u> and matters of which a court may take judicial notice" to determine "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation,



meets that standard." *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551

U.S. 308, 322-323 (2007).

-Whether Defendants Jayesh, Vimal and Devesh disseminated *false public*

*statements* to pre-existing investors and shareholders of over-valuating

stock prices, while these Defendants colluded in a *self-dealing transaction*

*to benefit in a personal and concrete way* with Defendants Jafri and

Onriva in order to funnel investor monies into a flailing startup, Onriva,

and its funding arm, Monriva Capital, with false asset purchase

agreements and prospectuses.

-Whether "scheme liability" as a Ponzi scheme was sufficiently pled, or

*would have been corrected* were leave to amend be offered for the

heightened trial-and-error standard for scheme liability of securities fraud.

==============================================

### SUMMARY OF ARGUMENT

==============================================

Appellants ProfitPay and Kar via counsel contend that *scienter* could

have been pled with more particularity, including particular allegations of

Defendants Jayesh's false public misstatements and omissions to



Appellant ProfitPay's shareholders. Rather, the district court's hasty ruling of dismissal with prejudice of the entire action <u>without leave to amend</u> 1-ER-2 – at <u>only a 'single bite of the apple'</u> of the heightened-p leading for securities fraud 2-ER-51; 2-ER-72 is prejudicial to the equitable rights of Appellant ProfitPay's shareholders in the sum of over $625,000. 2-ER-72-77.

Appellants ProfitPay and Kar contend that the district court failed to apply the Securities Litigation Uniform Standards Act of 1998 SLUSA) (15 U.S.C. § 78bb(f) *in tandem* with the Private Securities Litigation Reform Act of 1995 (PSLRA).

The district court erred in <u>not</u> pleading the SLUSA with the PSLRA in which the district court <u>erroneously dismissed the entire action predicated on a securities fraud claim in one fell swoop</u>.

The district court prior dismissed on <u>grounds of lack of diversity and for not including an indispensable party but not on securities fraud claim</u> because it was yet to be pled – but since then, the jurisdictional issue was rectified, and Appellants pled the securities fraud claim as cause of action seven in the second-amended complaint. 2-ER-72.



20

The district court's Final Order "I.A. Background" 1-ER-3-4 errs in reading like an wage-and-hour unemployment case of Appellant Kar.

Instead, the Appellants contend that the district court should have honed in on specific facts in the SAC of scienter to demonstrate Defendants' reckless indifference, particularly in Defendant Jayesh's self - dealing, personal-benefit transactions with Defendant Onriva and Jafri while mis-stating stock valuation prices to reasonable shareholders. 2-ER -75 ₱₱ 140-141.

==================================================

## STATEMENT OF FACTS

==================================================

### *Procedurally*

On April 27, 2023, Appellants filed the Complaint in federal court.

On May 09, 2023, Appellants filed the First-Amended Complaint as a **matter of right** under Fed. *Rul. Civ. Proc. Rul.* 15. The basis for federal jurisdiction was diversity.



On the May 25, 2023-status check, Appellees/Defendants' attorney Stebbins stated this was all "Nonsense" in a recorded hearing. The Defendants' lack of substantive argument was clear.

The district court's *abuse of discretion* personified– even when proper notice and declaration *re* notice were provided for an *ex-parte* preliminary injunctive relief. The purpose was to stay the existing assets of $625,000 so as for Defendants not to squander ProfitPay's shareholders' $625,000 assets in the Comerica bank account. But the district court *sua sponte* took the matter off calendar and only stated "improper notice." No reasoning as to why the district court thought the notice was improper was ever provided contradictory to what the district court opines in its final Order. 1-ER-10, lines 6-21.

Appellants Kar and ProfitPay's counsel– after retaining a registered process-server personally served each Defendant complaint, summons, and other case-initiating documents - had made such a significant effort to call, e-mail, and mail each Defendant to provide notice of the *ex-parte* preliminary injunction (because their attorney Stebbins would **not** accept notice of the preliminary injunction – even when he was their attorney of



22

record). Each notice was filed per code even when re-assignment occurred from magistrate to district judge.

On June 02, 2023, Defendants filed their First Motion to Dismiss claiming no diversity jurisdiction.

On June 16, 2023, Appellants in Opposition proffered additional evidence to plead a securities fraud claim in the next iteration.

On July 11, 2023, the district court granted that Appellees' First Motion to Dismiss, 1-ER-2, on the basis of a lack of diversity jurisdiction.

In the final Order, the district court falsely insinuates that the Motion to Dismiss was followed by a "status conference" (which it was not – there was no oral argument or any hearing for the First Motion to Dismiss). 5-ER490, Dkt # 61; 5-ER-491, Dkt # 83.

The district court goes on to misleadingly state, "During a status conference, plaintiffs' counsel urged the Court to allow plaintiffs the opportunity to amend. The Court obliged but reminded counsel she must comply with Rule 11 in doing so." 1-ER-2. But this status check was for an *ex-parte* preliminary injunction status held on May 25, 2023, months prior to the Motion to Dismiss was decided on July 11, 2023 without a



hearing, and the Order was published on July 11, 2023 <u>only on a lack of diversity jurisdiction grounds</u>. <u>Not on a securities fraud claim</u>, because such a claim was yet to be pled.

The district court has <u>no chronology</u> in its Final Order "I.A. Background" in 1-ER-2, and puts a **falsified** statement in the Order 1-ER-2 that Plaintiff "urged" the court to allow amendment during the status conference – which the district court <u>pretends came after</u> the Defendants' First Motion to Dismiss – but it was months prior.

In the written Opposition to the initial Motion to Dismiss, the Appellants via counsel had stated there was additional proffered evidence of a securities fraud claim against Defendants– that Appellants would dismiss Onriva to establish federal diversity jurisdiction – and that Appellants would bring a separate cause of action for securities fraud violation against Defendants.

On July 30, 2023, Appellants Kar and ProfitPay via counsel filed the Second-Amended Complaint ("SAC") wherein the Securities Fraud claim was pled for the **first time as the sixth cause of action**. **2-ER-72-77.**



In June-July 2023, Defendants filed a state case in San Francisco Superior Court of California, case number, 23CV418087 against Plaintiffs Kar and ProfitPay. On August 10, 2023, Appellants Kar and ProfitPay via counsel Reshma Kamath had filed a Notice of Removal to this federal court case.

On August 14, 2023, Appellees/Defendants filed the Second-Motion-to-Dismiss with *Fed. Rul. Civ. Proc. Rul.* 11 sanctions against Appellants' undersigned counsel. Appellants filed a timely Opposition.

On October 12, 2023, with <u>no oral argument</u>, the district court <u>dismissed the entire lawsuit</u>, including <u>the first-time-pled securities fraud claim</u>, *without leave to amend.*

In lines 14-27 of the Final Order, <u>for the first time dealing with securities fraud,</u> the district court makes bald-face, cursory allegations 1-ER-6, 5-ER-491, Dkt. # 84, Section "C. Analysis" skirting around securities fraud's pleading requirement – but not pin-pointing with veracity even one fact of the first- time-pled securities fraud claim in the Second-Amended Complaint. The district court <u>failed</u> to analyze even one element of PSLRA's four-prong-test particularly pled securities fraud



in the Second-Amended Complaint and the entirety of the complaint with documents incorporated via reference therein via declarations and exhibits, i.e., as to – scienter, material misrepresentation/omission, loss causation, and/or reliance. under *Tellabs*, 551 U.S. at 322-23.

From lines 24-27 of the Final Order, the district court puts forth only three sentences to discredit securities fraud. 1-ER-6. The district court draws the attention on its confusion, "In one paragraph, plaintiffs say that ProfitPay's stock was sold at an "inflated price of $0.83" per stock but then dropped to "$0.06." (SAC ⁋ 132.) In the very next paragraph, however, plaintiffs allege that defendants offered to pay ProfitPay's assets for "$50 a share, five (5) times more than the price at price at the last round of about ten dollars ($10)." (Id. ⁋ 133.)" <u>That was it for the court's analysis of securities fraud – nothing more.</u>

The two statements are mutually exclusive – one statement in the SAC shows Defendants made over-inflated stock valuations to shareholders of eighty-three cents (0.83 cents) to a dollar for one ProfitPay stock, whereas the real price dropped to six cents (0.06 cents) to a dollar. 2-ER- 58, 62, 67, 68, 74,  et seq., ⁋⁋ 55, 58, 131.



The next statement in 2-ER-133 shows Defendants Jayesh, Vimal and Devesh were making false statements to Appellant ProfitPay's shareholders that Defendants Jafri and Onriva were buying Appellant ProfitPay stock at fifty-dollars ($50) per share – when in reality, Defendants were selling at ten dollars ($10) per share. 3-ER-13-114.

The district court overlooks that this meets the detrimental "reliance" standard, the knowledge and reckless indifference of Defendants Jayesh, Devesh and Vimal to make shareholders in ⁋ 141 in 2-ER-75, detrimentally rely on false statements, and the public omission prongs of the securities fraud requirement under plausibility of Fed. *Rul. Civ. Proc. Rul.* 9 and particularity requirement of PSLRA. 2-ER-74, lines 134-138.

The district court further overlooks that Defendants Jayesh, Vimal, Devesh and Jafri's self-dealing transaction(s) specified in ⁋⁋ 141-142 in 2- ER-74 that Defendants Jayesh, Vimal and Devesh falsely took Appellant ProfitPay's shareholder monies of atleast $625,000 in ⁋ 140 *Id.,* 3-ER-91, unbeknownst to them – from Appellant ProfitPay's Comerica bank account to invest in Defendant Onriva's flailing stock for $50 per share. 2- ER-74-75 ⁋ 133-141. Neither was there oral argument for



Defendants' First motion to dismiss, nor for second motion to dismiss.
An appearance of bias and prejudice was displayed towards
Appellants' counsel.

On October 12, 2023, Plaintiffs' counsel had informed in writing
that the district court judge would be part of a lawsuit of judicial bias
and racial abuse; and that Plaintiffs' counsel would not "pay a penny"
of the Rule 11 sanctions. Plaintiffs' counsel had informed in writing that
the case where this complaint was stated was another CAND case
where Plaintiffs' **counsel had won an unanimous eight-person jury
verdict for federal trade secrets litigation under DUTSA**.

Therein, the district judges who were also named defendants in the
judicial bias/racial abuse lawsuit – had cited Plaintiffs' counsel for
'professional misconduct.' Following suit, the district judge for this
afore- captioned action also cited Plaintiffs' counsel for 'professional
misconduct'. The district court judge's lack of experience dealing with
securities fraud litigation was evident. The district court judge's judicial
misconduct was also evident.

///

///



### *Substantively*

Appellant/Plaintiff PROFITPAY TECHNOLOGIES, INC.,

("PROFITPAY") is a corporation organized under the laws of the State of

Delaware, having a principal place of business in California. 3-ER-13-114.

Appellant/Plaintiff TANMAY KAR ("KAR") was the Chief

Executive Officer and Chairman of the Board of Plaintiff PROFITPAY.

Plaintiff KAR was so successful that on its annual event, Plaintiff

PROFITPAY's main customer, TITANIUM, who was responsible for

ninety-percent (90%) of its revenue had honored KAR with three

awards: Award # 1: second largest year-over-year volume increase by $

75 million; Award # 2: second highest Profitable by Basis Points; 320

Basis Points; and Award # 3: Highest Revenue from a single account to

qualify as early retirement $33,000 per month.

To put this in context Plaintiff PROFITPAY was a pile of mess and

insolvent with its prior CEO and Defendants JAYESH, VIMAL and

DEVESH. Plaintiff KAR single-handedly worked on increasing profit

shares and financial revenues.



Appellee/Defendant JAYESH PATEL ("JAYESH") is an individual who is also the CEO of Athena Hospitality Group, CEO and Founder of a newly formed fundraising platform Monriva Capital residing in either Kentucky or Tennessee, a board member and shareholder of PROFITPAY and, on information and belief, a principal at ALINOR/ ONRIVA.

Defendant JAYESH has used Plaintiff KAR-generated Plaintiff PROFITPAY's increase in valuation to start raising money for Defendant ONRIVA for which the valuation started at one-hundred-and-thirty-five million dollars ($135 million). 2-ER-60-65.

Defendant JAYESH's Ponzi-scheme and SEC violations had begun then with the prior CEO CHASE HARMER – and Defendant JAYESH as broker-and-dealer/promoter had attracted plethora of mom-and-pop investors to invest $20,000-$100,000 of mostly Patels from India's Gujarati group, but not the savvy institutional investors who could have sniffed securities fraud and JAYESH's bluff. 2-ER-60-65.

Defendant DEVESH PATEL ("DEVESH,") is an individual and nephew of JAYESH; with VIMAL PATEL, ("VIMAL") who're both board members of PROFITPAY. 2-ER-60-65.



Defendant ALINOR HOLDINGS, INC., d/b/a ONRIVA with a principal place of business at Foster City, CA. ("ALINOR" or "ONRIVA" – not to be confused with "MONRIVA CAPITAL.") Defendant VAJID JAFRI ("JAFRI") is the purported owner of ONRIVA.

Plaintiffs TANMAY KAR (also a shareholder), INVESTORS, and, SHAREHOLDERS, *inter alia*, had made substantial investments in PROFITPAY TECHNOLOGIES, INC., and had detrimentally relied on DEFENDANTS' reckless misrepresentation with intent to deceit and fraud in not disclosing the sale and purchase of PROFITPAY TO ONRIVA even after the fact that the Defendants JAYESH, DEVESH, VIMAL, and JAFRI raised over $18,000,000 via SHAREHOLDERS of SERIES A, SERIES B, SAFE, AND SAFE B-1 investors with false promises and collecting exorbitant fees of twenty-five percent (25%) as opposed to two-to-five percent (2%-5%) as finders of money (typically board members never charge fees for helping to raise funds). 3-ER-13-114.

As of April 2021, this shareholder investment sum had $700,000 in Plaintiff PROFITPAY's COMERICA bank account that Plaintiff KAR was carefully managing. This sum should have progressively increased by



31

$60,000 per month from revenue received or collectible from customers which TANMAY KAR managed to keep afloat and steady until November 2021.

===================================================

### *Year 2021*

===================================================

For more than twenty-four (24) years, Plaintiff KAR was a highly accomplished entrepreneur as Chief Executive Officer (CEO) and Chief Financial Officer (CFO) at a plethora of successful companies backed by prominent venture capital firms. 3-ER-13-114.

In October 2021, Plaintiff KAR was approached by a C-suite executive recruiter for Appellee/Defendant JAYESH about a potential CEO role at PROFITPAY. 3-ER-13-114.

Defendant JAYESH's recruiter told KAR that PROFITPAY had about seventy-five (75) people, revenue growing from about three-hundred and fifty-thousand dollars ($350,000) per month to one million dollars ($1.0 million) per month to ten million ($10 million) per month; that it was



"about to secure a large funding round" and was "looking for a seasoned finance executive to spearhead the company's financial future."

Falsely, Defendant Jayesh hyper-inflated having 500-700 million dollars where PROFITPAY had almost no revenue prior to KAR's joining as CEO and shareholder. Defendant JAYESH told all ProfitPay shareholders in newsletters that PROFITPAY had $53 million in the bank with a $700 million valuation and IPO of $2 billion in two years. None of this was true. 3-ER-191.

Defendant JAYESH did not disclose PROFITPAY's dire situation and that the prior CEO was in a DUI accident. 3-ER-180.

However, Defendants JAYESH and VIMAL forced Appellant KAR to pay one-hundred thousand dollars ($100,000) to buy out one single individual investor.

In the ensuing months, Plaintiff KAR managed to turn around PROFITPAY's business, replacing prior CEO, buying back the prior CEO's shares for the company, reducing more than $3 million in liabilities to nearly zero, replacing employees, shutting down non-p erforming code, moving customers to a different platform, and finally



achieving profitability for Plaintiff PROFITPAY while running the business as a sole employee while dealing with a seriously stressful and volatile environment that the prior CEO had created. 3-ER-166-169.

Defendants JAYESH and others failed to keep Appellant PROFITPAY's finances in order; taxes could not be filed because of the lack of financial records; and dealing with back taxes which were not p-aid to the State Franchise Board. 3-ER-166-169.

Meanwhile , Defendant JAYESH was engaged in a Ponzi scheme with Defendant ALINOR /ONRIVA that Defendant JAFRI owned to further mislead Appellant KAR and hundreds of investors . 3-ER-166; 191.

Defendant JAYESH, who in conversations has purported to be a "billionaire," "launching a multi-billion-dollar fund," and taking Defendant ONRIVA public in a matter of months has, in fact, been operating a fraudulent scheme to obtain investment at Defendant ONRIVA—and is attempting to gain control of PROFITPAY's assets in furtherance of the scheme. 3-ER-166-169.

Defendants JAYESH, VIMAL and DEVESH have launched a fundraising platform Monriva Capital raising one billion dollars ($1.0



billion) at the end of the year 2022 to Defendants' successful scheme of raising money from innocent shareholders. 3-ER-191-192.

===================================================

***Year 2022***

===================================================

In October 2022, a fundraising party was held that Defendant JAYESH claimed to be a huge success including the launch of his fund, Monriva Capital, a platform to raise capital.

Defendant ONRIVA was in business for approximately eight (8) years with no stable market team. Despite Plaintiff KAR's repeated requests, Defendants ONRIVA and JAYESH have not provided basic financial diligence materials, such as the GAAP-compliant financial statements.

Plaintiff KAR had become suspicious when Defendant JAYESH messaged Plaintiff KAR that the revenue of Defendant ONRIVA was thirty-million ($30 million), which in an ultra-low margin travel intermediary business for gross ticket sales corrected would mean only one-and-one-and-a-half million dollars ($1-$1.50 million).



This type of communication would have led an outsider to believe that Defendant ONRIVA could generate hundreds of millions of dollars ($100 million) of revenue in a jiffy only to get to a billion-dollar valuation as opposed to be generating one-to-two-million dollars ($1-2 million) only.

This was the false and misleading statement that Defendants were attempting to put forth to investors of PayCertify, Inc. D/B/A Appellant PROFITPAY. 3-ER-175.

Subsequently, without involving Plaintiff KAR in any negotiations with Defendant JAFRI, CEO of ONRIVA, Defendant JAYESH e-mailed Plaintiff KAR a draft term sheet with transaction terms. None of the terms of the draft term sheet were shared with investors and shareholders by Defendant JAYESH. 3-ER-166-169.

Defendant JAYESH was suggesting that Defendant ONRIVA would buy PROFITPAY-assets for about 660,000 shares each priced at fifty dollars ($50) per share, five (5) times more than the price at the last round of about ten dollars, ($10) per share. 2-ER-61, 131-133.

Defendant JAYESH kept Plaintiff KAR under the impression that ONRIVA was going to produce $100 million in revenue in less than a



year, would go public, and provide five-to-ten times (5-10X) exit to the Plaintiffs at the very least while pointing out to the success of TRIP ACTIONS (about twelve billion ($12 billion) dollar valuation while doing one billion dollars ($1 billion) in revenue.)

But Defendant ONRIVA's revenue was under one million dollars ($1 million) for the year 2022 and was not even two-to-three million dollars ($2-3 million) in the year 2023. But Defendant JAYESH sent WhatsApp messages overstated twenty times (20X), not twenty percent (20%.)

Defendants JAYESH and ONRIVA were operating a Ponzi scheme.

In a self-dealing transaction to personally benefit Defendant JAYESH, Defendant VAJID JAFRI, owner of Defendant ONRIVA, had sold his personal shares held in his previous company, Mondee, Inc., to Defendant JAYESH. Thus, Defendant JAYESH was making a concrete personal profit from sale of PROFITPAY's assets (unbeknownst to PROFITPAY shareholders) to Defendant ONRIVA and its owner, JAFRI – buying and selling shares amongst themselves of stocks of other companies than PROFITPAY and ONRIVA, i.e. even MONDEE, and raising capital for MONRIVA CAPITAL – while luring shareholders of PROFITPAY.



37

As a result, Defendant JAYESH in self-dealing now owns thirteen percent (13%) of Appellant PROFITPAY's shares as a result of hyper-inflated misstatements.

====================================================

### *Year 2023*

====================================================

On April 16, 2023, Defendant JAYESH called a Board meeting, but denied providing to Appellant KAR any basic diligence material about Defendant ONRIVA such as a basic financial statement.

On April 18, 2023, Defendant JAYESH purportedly caused Plaintiff PROFITPAY to enter into an alleged closed-doors "Asset Purchase Agreement" with Defendant ONRIVA and owner Defendant JAFRI.

Plaintiff KAR, CEO and then-BOARD MEMBER of Plaintiff PROFITPAY was not kept in the loop about this. Neither were the hundreds of shareholders of Plaintiff PROFITPAY. In this purported Asset Purchase Agreement, Defendant ONRIVA with Defendant JAFRI would purportedly acquire the assets of Plaintiff PROFITPAY, i.e., the investment of shareholders.



However, Defendant JAYESH fraudulently manipulated the purported Asset Purchase Agreement in order to acquire Plaintiff PROFITPAY on unduly favorable terms to Defendants JAYESH, ONRIVA and JAFRI, while pretending that the shares will be distributed ratably per the Cap table shared with both Defendant ONRIVA and Defendant JAYESH weeks before. According to the Defendants, the terms would be diluted to the value of Plaintiff PROFITPAY including Plaintiff and CEO KAR, by 80%.

Defendant JAYESH, as a principal of both Defendant ONRIVA and Plaintiff PROFITPAY, has attempted to effectuate a **highly self-interested and self-dealing transaction in violation of SEC ACT 10B5**, to the detriment reliance of the shareholders of PROFITPAY, including Plaintiff KAR.

Defendant JAYESH, and the other board members of Plaintiff PROFITPAY, **did not seek approval** for the closed-doors Asset Purchase Agreement from non-conflicted Plaintiffs and/or shareholders of PROFITPAY.



Where a transaction between two corporations thereby benefits one corporation at the expense of the other corporation, and especially if it personally benefits majority-directors, it should be set aside. *Remillard Brick Co. v. Remillard-Dandini Co.* (1952) 109 Cal.App.2d 405, 241 P.2d

The closed-doors Asset Purchase Agreement that Defendants JAYESH, VIMAL and DEVESH circulated is a **conflicted, self-dealing and self-interested transaction** that harms Plaintiff PROFITPAY's such as Plaintiff TANMAY KAR, as well as the other INVESTORS, SHAREHOLDERS, inter alia; and, that PROFITPAY is intended solely to provide assets to Defendant ONRIVA to support Plaintiff JAYESH's ongoing Ponzi scheme at Defendant ONRIVA.

As such, the **Asset Purchase Agreement of Defendants JAYESH, VIMAL and DEVESH with Defendants JAFRI and ONRIVA, taking Plaintiff PROFITPAY's shareholder and investor monies, is void and/or must be set aside.**

Defendants JAYESH, VIMAL and DEVESH with Defendants JAFRI and ONRIVA's **deliberate and intentional misrepresentations were that stocks would double, triple, and quadruple.**



40

Initially, the stocks were sold at an **inflated price of $0.83** (eighty-three cents) per stock. However, **the price per stock had fallen to $0.06** (six cents). 2-ER-61 SAC 131-133.

Subsequently **without involving Plaintiff KAR, and/or any investors/shareholders, in any negotiations with Defendants JAYESH, VIMAL and DEVESH with Defendants JAFRI and ONRIVA, Defendant JAYESH unilaterally** e-mailed Plaintiff KAR **a draft term sheet with transaction terms**. 3-ER-13.

Defendants' draft term sheet" suggested that Defendant ONRIVA and Defendant JAFRI would (**without informing and disclosing to shareholders**) buy the Plaintiff PROFITPAY's assets (**shareholder monies and investments**) of 660,000 shares each priced at about $50 per share, five (5) times more than the price at the last round of those shares about ten dollars ($10) per share.

Prior to Defendants JAYESH, DEVESH and VIMAL's sale to third-party Defendant JAFRI and Defendant ONRIVA/ALINOR, there was **ONLY ONE vague e-mail to investors and shareholders with NO ATTACHMENTS; no terms disclosed to investors and shareholders in**



41

**any kind of public disclosure; no shareholder and investor meetings to disclose the sale and purchase of PROFITPAY to ONRIVA;** <u>no executed agreements with PLAINTIFF, CEO and then-BOARD MEMBER of PROFITPAY, Plaintiff TANMAY KAR.</u> 3-ER-13.

Only a draft agreement existed without signatures purporting a sale of PROFITPAY to ONRIVA/ALINOR.

Initially, Defendants JAYESH, DEVESH, and VIMAL raised capital and monies from investors and shareholders for Appellant PROFITPAY's financial intermediary platform business. But after taking over $625,000 of investors' monies, Defendants JAYESH, DEVESH, and VIMAL allegedly told investors to make a decision between whether they wanted their monies to be invested in Plaintiff PROFITPAY, or a completely different unknown third-party, Defendant ONRIVA. However, shareholders had not invested in Defendant ONRIVA, they had invested $625,000 and more in Plaintiff PROFITPAY. Defendants JAYESH and others were holding the shareholders' monies hostage. 2-ER-61, SAC 141.



Based on this, investors/shareholders were misled – as they detrimentally relied on investments in PAYCERTIFY, INC. that was converted to PROFITPAY.

Now, unbeknownst to shareholders, including Plaintiff KAR, the entire sum of monies, $625,000 was getting re-invested into Defendant ONRIVA.

This was not a simple buy-out, merger and acquisition, or an ouster. This was a Ponzi scheme to lure innocent investors and shareholders duping them with falsehoods, misrepresentations, and omissions.

Then, in a fourth series of lawsuit, Defendants Jayesh, Devesh and Vimal have sued Appellants' Counsel Reshma Kamath, and Appellant Kar, in the Circuit Court for Williamson County, Tennessee, Case No. 23CV-608. ("Tennessee lawsuit.") End of the year 2023 and beginning of the year 2024 were a series of harassing service attempts made at Appellants' Counsel Reshma Kamath's parents' home for the Tennessee lawsuit.

///

///

///

///



======================================================

## STANDARD OF REVIEW

======================================================

### *Securities Fraud Leave to Amend is reviewed under Abuse of Discretion Standard of Review*

======================================================

Denial of leave to amend is reviewed for abuse of discretion. In re *Vantive Corp. Sec. Litig.*, 283 F.3d at 1097; *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir. 2002); *Broudo v. Dura Pharm., Inc.,* 339 F.3d 933, 937 (9th Cir.2003) (citation omitted); *AmerisourceBergen Corp. v. Dialvsist W. Inc.*, 465 F.3d 946, 949 (9th Cir. 2006); *Allen v. City of* Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990); *Flores v. California Department of Corrections and Rehabilitation* 224 Cal.App.4th 199 (Cal. Ct. App. 2014); *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58); *Lockheed Martin Corp. v. Network Solutions, Inc*., 194 F.3d 980, 986 (9th Cir. 1999); is reviewed for abuse of discretion. *Simon v. Value Behavioral Health, Inc*., 208 F.3d 1073, 1084 (9th Cir. 2000).



The trial court abuses its discretion in denying leave to amend only if the plaintiff shows a reasonable possibility of curing any defect by amendment. *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.

In reviewing a court's denial of leave to amend, a "court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003); see also *Klamath-Lake Pharm. Ass'n v. Klamath Med. Sen7. Bureau,* 701 F.2d 1276, 1292-93 (9th Cir. 1983) (explaining that "where the record does not clearly dictate the district court's denial, we have been unwilling to affirm absent written findings," particularly where there is no clear showing that amendment would be futile).

"Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Id.* (quoting *Polich v. Burlington N., Inc*., 942 F.2d 1467, 1472 (9th Cir. 1991); *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011).



45

================================================

### PSLRA and SLUSA are reviewed under De Novo Standard of Review

================================================

"Our case law simply does not support the Defendants suggestion that, under the PSLRA, plaintiffs have only a single "bite at the apple." See *Eminence*, 316 F.3d at 1053." *Carol Gamble Trust 86 v. E-Rex, Inc.* (9th Cir. 2004) 84 F. App'x 975, 979.

The Ninth Circuit Court of Appeals must review de novo the district court's dismissal of a federal securities complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 983 (9th Cir.1999). The Ninth Circuit Court of Appeals must also review de novo dismissal of a securities complaint without leave to amend. Thus, the standard of appellate review is de novo. *Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 704, 24 Cal.Rptr.3d 351. This standard must be applied because "the decisive facts are



46

undisputed, [and] we are confronted with a question of law....” *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799, 35 Cal.Rptr.2d 418, 883 P.2d 960.

Because fraudulent inducement is a claim under state law, the Court applies de novo review. *Matsuura v. Alston & Bird,* 166 F.3d 1006, 1008 n.3 (9th Cir.), opinion amended on denial of reh'g, 179 F.3d 1131 (9th Cir. 1999).

The question whether Defendants Jayesh violated 10b-6 is a mixed question of law and fact and is reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) *(en banc), cert.* denied, 469 U.S. 824, 105 S.Ct. 101.

In *Louis, supra*, 42 Cal.3d 969, we found helpful a then recent decision by the Ninth Circuit Court of Appeals, sitting *en banc*: *United States v. McConney* (9th Cir. 1984) 728 F.2d 1195. *McConney* examined the broad general question of the proper standard of appellate review for mixed questions of law and fact, and it concluded that when, as here, a mixed question of law and fact implicates a constitutional right, “[t]he predominance of factors favoring de novo review is . . . striking.” (*Id.* at p. 1203.)



The court must review an order granting a motion to dismiss de novo. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.2009). "All well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the nonmoving party." *Faulkner v. ADT Sec. Servs., Inc.,* 706 F.3d 1017, 1019 (9th Cir.2013) (citations omitted). However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Faulkner,* 706 F.3d at 1019 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

The Ninth Circuit Court of Appeals must review de novo the district court's dismissal of a federal securities complaint for failure to state a claim under Federal *Rule of Civil Procedure Rule* 12(b)(6). *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 983 (9th Cir.1999). The Ninth



Circuit Court of Appeals must also review de novo dismissal of a securities complaint without leave to amend.

In assessing whether Appellants had adequately pled a private federal action for securities fraud, the Ninth Circuit Court of Appeals must review de novo the district court's dismissal without prejudice and without leave to amend the first time the securities fraud claim was pled. See *Manzarek v. St. Paul Fire Marine Ins. Co.,* 519 F.3d 1025, 1030 (9th Cir. 2008).

The Ninth Circuit Court of Appeals must accept all well-pled factual allegations as true and construe them in the light most favorable to Reese. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). However, in pleading fraud, "a party must state with particularity the circumstances constituting fraud or mistake," Federal *Rule of Civil Procedure Rule* 9(b), and Appellants must plead plausible allegations, *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009); *Cqfasso v. Gen. Dynamics Ch Sys.,* 637 F.3d 1047, 1055 (9th Cir. 2011).

PSLRA also requires that a complaint alleging misleading statements or omissions "specify each statement alleged to have been misleading, the



reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). See *No. 4 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.,* 320 F.3d 920, 937-38 (9th Cir. 2003) (discussing scienter pleading requirements); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999) (same); see also *Tellabs, Inc. v. Makor Issues Rights, Ltd.,* 551 U.S. 308, 314, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ("[A]n inference of scienter must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."); *South Ferry LP*, 542 F.3d at 782-85 (9th Cir. 2008) (discussing scienter pleading requirements after Tellabs). Thus, the misrepresentation claims pled must satisfy the "particularity" requirement of *Rule* 9(b) of the Federal *Rules of Civil Procedure*, the "plausibility" requirement of Iqbal, and the scienter requirement of the PSLRA.

///

///

///



===================================================

## ARGUMENT

===================================================

I. **PSLRA, Fed. *Rul. Civ. Proc. Rule* 15, Plausibility of Fed. *Rul. Civ. Proc. Rule* 9, and Heightened-Pleading Standard for Securities Fraud Required Atleast a Second "Bite at the Apple" per *Eminence***

===================================================

The district court erred in literally dismissing the entire securities fraud claim within two paragraphs alleged in a non-substantive analysis. *See* 1-ER-5, lines 14-27; 1-ER-2, lines 19-25; 1-ER-6 lines 21-27; **2-ER-59-64. 4-ER-29-38.**

In enacting the Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat. 737, Congress recognized that although private securities-fraud litigation furthers important public-policy interests, prime among them, **deterring wrongdoing and providing restitution to defrauded investors.** H. R. Conf. Rep. No. 104-369, pp. 31-32 (1995).

The PSLRA's response to the perceived abuses was, *inter alia*, to "impos[e] heightened pleading requirements" for securities-fraud actions,



51

"limit recoverable damages and attorney's fees, provide a 'safe harbor' for forward-looking statements, impose new restrictions on the selection of (and compensation awarded to) lead plaintiffs, mandate imposition of sanctions for frivolous litigation, and authorize a stay of discovery pending resolution of any motion to dismiss." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006). See also 15 U.S.C. §78u-4 (2006 ed. and Supp. V).

Congress later fortified the PSLRA in enacting the Securities Litigation Uniform Standards Act of 1998, 112 Stat. 3227, which curtailed plaintiffs' ability to evade the PSLRA's limitations on federal securities-fraud litigation in bringing class-action suits under state rather than federal law. See 15 U.S.C. §78bb(f)(1) (2006 ed.). *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds* (2013) 568 U.S. 455.

This is what district court fatally allowed Intervenors Shailesh Patel and other John Doe Intervenors to do – to dismiss their properly-filed SLUSA suit- and then to re-file the <u>same claim in state court</u> in a lawsuit where it is currently litigated. The district court in essence allowed a multiplicity of lawsuits for the same transaction, occurrence, or subject-matter in four



different state, federal and circuit courts – even in Tennessee. What a waste of judicial resources!

To recover damages in a private securities-fraud action under §10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, a plaintiff must prove, among other things, reliance on a material misrepresentation or omission made by the defendant. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38, 131 S. Ct. 1309, 179 L. Ed. 2d 398, 409. Requiring proof of direct reliance "would place an unnecessarily unrealistic evidentiary burden on [a] plaintiff who has traded on an impersonal market." *Basic Inc. v. Levinson*, 485 U.S. 224, 245, 108 S. Ct. 978, 99 L. Ed. 2d 194. Thus, this Court has endorsed a "fraud-on-the-market" theory, which permits securities-fraud plaintiffs to invoke a rebuttable presumption of reliance on public, material misrepresentations regarding securities traded in an efficient market. *Id.,* at 241-249, 108 S. Ct. 978, 99 L. Ed. 2d 194.

Reliance "is an essential element of the §10(b) private cause of action" because "proof of reliance ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury." *Halliburton*, 563



U. S., at 810, 131 S. Ct. 2179, 180 L. Ed. 2d 24, at 31 (internal quotation marks omitted). **2-ER-60-127-129.**

"The traditional (and most direct) way" for a plaintiff to demonstrate reliance "is by showing that he was aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *Ibid.*. Plaintiffs Kar and Profit Pay adequately demonstrated reliance in alleging that Defendant Jayesh was aware of Defendant Onriva's flailing status as a start-up and even then misleading shareholders engaged in a self-dealing transaction.

Courts have recognized, however, that requiring proof of direct reliance "would place an unnecessarily unrealistic evidentiary burden on [a] plaintiff who has traded on an impersonal market." *Basic*, 485 U. S., at 245, 108 S. Ct. 978, 99 L. Ed. 2d 194.

Accordingly, in *Basic*, the Court endorsed the "fraud-on-the-market" theory, which permits certain Rule 10b-5 plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations aired to the general public. *Id.*, at 241-249, 108 S. Ct. 978, 99 L. Ed. 2d 194.



Appellant and Plaintiff Tanmay Kar made a rebuttable presumption of reliance on Appellees and Defendants Jayesh, Devesh and Vimal Patel's material misrepresentations aired to the general public, including the current investors of Plaintiff ProfitPay. In terms of the material misrepresentations, the Monriva Capital issue was a new fund that Appellees and Defendants Jayesh, Devesh and Vimal Patel created with their flailing startup accomplice, Appellee and Defendant Vajid Jafri. Such was pled in the amended complaint that was **dismissed with prejudice at the very first "bite at the apple" for securities fraud**. Leave to amend would have **cured the defects** in pleading heightened securities fraud and meeting the required standard. 4-ER-29-38.

After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party. Federal *Rule of Civil Procedure Rule* 15(a). Generally, Rule 15 advises the court that "leave shall be freely given when justice so requires." This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.



1990)). In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court offered the following factors a district court should consider in deciding whether to grant leave to amend:

In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given." *Id.* at 182, 83 S.Ct. 227. See also *Allen v. City of Beverly Hills*, 911 F.2d 367, 373, (9th Cir. 1990) (citing *Foman* factors, as well as "previous amendment"); *Hurn v. Ret. Fund Trust of the Plumbing, Heating Piping Indus. of S. Cal.,* 648 F.2d 1252, 1254 (9th Cir. 1981).

Appellant and Plaintiff Tanmay Kar did not demonstrate undue delay, bad-faith or a delaying intent. Appellant Kar's complaint was initially not a securities fraud complaint – however in the second iteration, securities fraud and fraud in general were pled for the first time. The court dismissed the securities fraud without leave to amend immediately. Defendants would not have been prejudiced, because Defendants had filed a case



against Appellant Kar in state court assuming that this federal lawsuit would be dismissed. Thereafter, Appellant via counsel removed that state case – and both were dismissed. Defendants then re-filed another lawsuit in the state of Tennessee. During this time, the investors who were John Doe intervenors decided to file their separate state court lawsuit against Defendant Jayesh, Vimal and Devesh Patel. Thus, if the federal lawsuit was provided one more amendment, it would secure and have met the heightened securities fraud pleading standard. This would not have caused any prejudice to the Defendants, because it was foreseeable that securities fraud, inter alia, would be pled sufficiently and with particularity. But the district court decided to dismiss without leave to amend, in essence without prejudice. This is an abuse of discretion.

Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight. See *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987). Prejudice is the "touchstone of the inquiry under rule 15(a)." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,* 238 F.3d 363, 368 (5th Cir. 2001); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.



1973) (stating that "the crucial factor is the resulting prejudice to the opposing party"); cf. DCD Programs, 833 F.2d at 186-87 (noting that party opposing amendment "bears the burden of showing prejudice"). Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. See *Lowrey v. Tex. A M Univ. Sys.,* 117 F.3d 242, 245 (5th Cir. 1997).

A simple denial of leave to amend without any explanation by the district court is subject to reversal. 1-ER-2-10. Such a judgment is "not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1292-93 (9th Cir. 1983) (noting "where the record does not clearly dictate the district court's denial, we have been unwilling to affirm absent written findings"); *Rolf v. City of San Antonio*, 77 F.3d 823, 828-29 (5th Cir. 1996); *United Steelworkers of Am., AFL-CIO v. Mesker Bros. Indus., Inc.,* 457 F.2d 91, 94 (8th Cir. 1972).

Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved



by amendment. *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir. 1996). A district court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion. See *Foman*, 371 U.S. at 182, 83 S.Ct. 227; see also *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986); *Klamath-Lake,* 701 F.2d at 1292-93.

Here, the district court made some vague statements about the PSLRA in dismissing the securities fraud claim for relief in the first iteration of the Appellants' amended complaint. There was no specific reasoning and factual findings in the Order of the district that would have allowed the district court to draw a conclusion as to why or why not were Appellees Jayesh, Vimesh and Devesh Patel engaged in securities fraud.

Adherence to these principles is especially important in the context of the PSLRA. The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail "giving rise to a strong inference of deliberate recklessness." *In re Silicon Graphics, 183 F.3d 970, 979* (9th Cir. 1999). This is not an easy standard to comply with — it was not intended to be — and plaintiffs must be held



to it. But how much detail is enough detail? When is an inference of deliberate recklessness sufficiently strong? There is no bright-line rule. Sometimes it is easy to tell, but often it is not. The acid test is a motion to dismiss. The courts need to bear in mind that this is not the world of notice pleadings. In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.

However, the district court did not allow for such a trial-and-error to take place to meet the burden of the heightened pleading standards of the securities fraud PSLRA complaint. **4-ER-29-44.**

In the *Eminence Capital* securities fraud case, the Ninth Circuit Court of Appeals decided that the district court's failing to grant leave to amend is akin to an abuse of discretion in PSLRA.

> "We do not quarrel with the district judge's assessment that the First Amended Consolidated Complaint was deficient. However, we believe that the district court did not appropriately exercise its discretion by denying plaintiffs leave to amend where, as here, plaintiffs' allegations were not frivolous, plaintiffs were endeavoring in good faith to meet the heightened pleading requirements and to comply with court guidance, and, most importantly, it appears that plaintiffs had a reasonable chance of successfully stating a claim if given another opportunity." *Eminence Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F.3d 1048, 1053.



Upon *de novo* review, it is clear the complaint could have been saved via amendment. In *Sabra v. Maricopa Cnty. Cmty. Coll. Dist*, the Ninth Circuit Appellate Court held that the district court abused its discretion because "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."

*Similarly*, in Appellant Kar's case, upon de novo review, this Ninth Circuit Court of Appeals should have found that plaintiffs Kar and ProfitPay via counsel would have had a reasonable chance of successfully stating a claim of securities fraud against the Defendants Jayes, Vimal and Devesh if Appellants ProfitPay and Kar were provided another opportunity to re-plead securities fraud a second-time in a third-amended complaint. **4-ER-29-44.** Plaintiffs were endeavoring in good faith to meet the heightened pleading requirements alleging that Monriva Capital and Defendant Onriva were creating material misrepresentations to the general public and investors – such as Intervenors Shailesh Patel and others 2-ER-64, 141 – while causing detrimental reliance upon fake appreciation projections for shareholder investments. However, Monriva Capital and Onriva Holdings were flailing



startups that needed a cash influx - that Defendants Jayesh, Vimal and

Devesh Patel were luring and duping investors to fund. When Plaintiff Kar

as CEO of ProfitPay caught wind of this, he immediately filed the lawsuit

– but not informing his counsel about securities fraud – rather Plaintiff Kar

talked about insurance issues with the former CEO Chase Harmer and about

breach of fiduciary duty. It was only when the PayCertify issue and

investments of over two-hundred (200) investors were shared with counsel

– was there a strong inference more than a reasonable probability that

securities fraud was a concern.

   In this case, the Ninth Circuit Appellate Court decided that the liberal

amendment policy of Rule 15 should be adhered to precisely because the

PSLRA requires "an unprecedented degree of specificity and detail." *ACA*

*Financial Guaranty Corp. v. Advest, Inc. (1st Cir. 2008) 512 F.3d 46*

holding that dismissal with prejudice is appropriate only when the

complaint could not be saved by amendment. *Stanley v. Goodwin* (9th Cir.

2007) 262 F. App'x 786. The court held that dismissal without leave to

amend is improper unless the complaint could not be saved by any

amendment. *Miller v. Yokohama Tire Corp.* (9th Cir. 2004) 358 F.3d 616;



district court erred in not granting leave to amend the complaint in a securities fraud case in order for plaintiffs to meet the scienter requirement of the PSLRA. *Broudo v. Dura Pharmaceuticals, Inc.* (9th Cir. 2003) 339 F.3d 933; "it is the consideration of prejudice to the opposing party that carries the greatest weight" among the leave to amend factors. *Snapkeys, Ltd. v. Google LLC* (N.D. Cal., May 17, 2021, No. 19-cv-02658-LHK (VKD)). The court held in a decision whether to grant leave to amend, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Jones v. Bergelectric Inc.* (E.D. Cal., Aug. 27, 2021, 2:21-cv-0614-KJM-CKD (PS).; *that* the district court had erred in dismissing the plaintiff's fraud claim with prejudice because there was a reasonable probability that plaintiff could have saved the complaint by amendment. *Chambers v. Nationwide Mut. Ins. Co. (*N.D. Ohio, Feb. 8, 2021, CASE NO.: 1:19CV2601); Rule 15 amendment policy should "be applied with extreme liberality" *United States ex rel. Arik v. DVH Hosp. All., LLC (*D. Nev., May 3, 2021, Case No.: 2:19-cv-01560-JAD-VCF) whether to grant leave to amend, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Pivonka v. Allstate Ins. Co. (9th Cir. 2014)*



*558 F. App'x 756* absent a "strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15 in favor of granting leave to amend."; *Nutrition Distribution, LLC v. Enhanced Athlete, Inc. (E.D. Cal., Feb. 14, 2018, No. 2:17-cv-01491-TLN-KJN)* held district court erred by denying leave to file fourth amended complaint where plaintiffs "had not filed three substantially similar complaints" . . . "re-alleging the same theories in an attempt to cure pre-existing deficiencies." *Nasser v. Julius Sammann Ltd. (S.D. Cal., Aug. 14, 2017, Case No.: 17-cv-0863-BTM-MDD);* repeated efforts to meet heightened pleading standard not bad faith where plaintiffs proffered that "additional evidence was forthcoming which would enable them to add necessary details to their complaint" *Martinez v. City of W. Sacramento (E.D. Cal., Feb. 4, 2019, No. 2:16-cv-02566-TLN-EFB); Zemola v. Carrington Tea Co. (S.D. Cal., Jan. 24, 2018, Case No.: 17cv760-MMA (KSC))* dismissal without leave to amend is appropriate "where it is "clear . . . that the complaint could not be saved by amendment." *Cal. State Emps. Ass'n v. Bogart (E.D. Cal., Feb. 2, 2015, No. 2:14-CV02494 JAM-KJN)*; leave to amend ordinarily should be granted with "extreme liberality"; *Frank v. Cnty. of Humboldt (N.D. Cal., June 18, 2014,*



*No. C 13-0089 MMC);* leave to amend is often proper except when it is clear that, on de novo review, amendment would be futile, and noting that alleging and re-alleging the same failed theories generally leads to failure. *In re Netflix, Inc., Securities Litigation (N.D. Cal., Jan. 17, 2014, No. 12-00225 SC);* Rule 15's provisions must be "applied with extreme liberality." *Kinney v. State Bar of Cal. (9th Cir., Jan. 19, 2017, No. 15-55329);* "generally, Rule 15 advises the court that leave shall be freely given when justice so require"; *Denman v. City of Tracy (E.D. Cal., Oct. 25, 2012, No. CIV 2:11-cv-0310-GEB-JFM), in* determining whether leave to amend should be granted under Rule 15, consideration of prejudice to the other party carries the greatest weight; *Experexchange, Inc. v. Doculex, Inc.* (N.D. Cal., Nov. 16, 2009, No. C-08-03875 JCS) district courts should consider "repeated failure to cure deficiencies by amendments previously allowed" in denying leave to amend; *Holly v. Alta Newport Hosp., Inc.* (C.D. Cal. 2020) 612 F. Supp. 3d 1017) finding "consideration of prejudice to the opposing party . . . carries the greatest weight." *Purdum v. Wolfe* (N.D. Cal., Jan. 15, 2014, No. C-13-04816 DMR); liberal principles of Rule 15 are



"especially important in the context of the PSLRA." *In re Fritz Companies Securities Litigation,* 282 F.Supp.2d 1105, 1109 (N.D.Cal. 2003).

*In this instant matter*, Appellants Kar and ProfitPay via counsel had proffered additional evidence that was forthcoming to provide the district court with the necessary details to meet the heightened pleading requirement of securities fraud. However, the district court failed to apply the extreme liberality standard of Rule 15 governing that leave to amend must be freely given. There was only ONE ITERATION OF SECURITIES FRAUD – BEFORE LEAVE TO AMEND WAS DENIED AND THE ENTIRE CASE DISMISSED WITH PREJUDICE. **4-ER-29-44.**

Of these considerations, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Utterkar v. Ebix, Inc.* (N.D. Cal., Aug. 25, 2015, Case No.14-CV-02250-LHK).



Defendants did not prove that amendment would be futile. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller,* 845 F.2d at 214. The Ninth Circuit has alternatively stated that the test of whether amendment would be futile is "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id.* (citing 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974)).

Defendants brought a 12(b)(6) motion, and not a Plaintiffs' Rule 15 leave to amend motion. *Utterkar v. Ebix, Inc.* (N.D. Cal., Aug. 25, 2015, Case No.14-CV-02250-LHK) [pp. 15-16].

Any fraud must be pled with particularity, *Fed. Rul. Civ. Proc. Rul.* 9(b); but the rule is applied assiduously to securities fraud. This Circuit's strict pleading requirements in securities-fraud cases, see *Novak v. Kasaks*, 216 F.3d 300, 307-10 (2d Cir. 2000), were (essentially) codified in the Private Securities Litigation Reform Act of 1995, id. at 309-11. So no claim should be filed unless and until it can be supported by specific factual allegations. See, e.g., *Levitt*, 340 F.3d at 104 ("[C]omplaints in federal



securities fraud cases [must] allege 'those events which they assert give rise to a strong inference that [the] defendants had knowledge of th[e] facts . . . or recklessly disregarded their existence,' including `when the particular events occurred.'") (quoting *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir. 1979)). A ripe claim will keep only for one year, but "[t]he triggering . . . data must be such that it relates directly to the misrepresentations and omissions the Plaintiffs allege in their action against the defendants." *Newman*, 335 F.3d at 193 (emphasis added) (citation and quotation marks omitted). *Lentell v. Merrill Lynch Co., Inc.* (2d Cir. 2005) 396 F.3d 161.

==================================================

## II. Inter-Play between SLUSA, PSLRA & Securities Fraud Pleading

==================================================

The SLUSA and PSLRA are both the proper statutes to apply for securities fraud. Appellants Kar and ProfitPay via counsel properly removed Defendants' state case to federal court, on the ground the claims were preempted by the Securities Litigation Uniform Standards Act of 1998 (SLUSA) (15 U.S.C. § 78bb(f)).



Congress enacted SLUSA "because heightened pleading requirements in federal securities cases caused a pilgrimage of securities claims to state courts, thus circumventing congressional reforms designed to restrict federal securities claims." *Falkowski v. Imation Corp*., 309 F.3d 1123, 1128 (9th Cir. 2002).

PSLRA and SLUSA are both applicable in this case. For example, Defendants Jayesh, Vimal and Devesh alleged an untrue statement or omission of material fact to Appellants Kar, ProfitPay and investors. Further, Defendants Jayesh, Vimal and Devesh and Jafri used or employed manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security. Construing "the phrase 'in connection with the purchase or sale' of securities in SLUSA the same way we construe it in the Section 10(b) context" *Madden v. Cowen Co.* (9th Cir. 2009) 576 F.3d 957. "See, e.g., Securities Litigation Uniform Standards Act of 1997: Hearing on S. 1260 Before the S. Comm. on Banking, Housing, and Urban Affairs, Subcomm. on Securities, 105th Cong. 48 (Oct. 29, 1997).



SLUSA is described as the most recent in a line of federal securities statutes originating with Congress passage of the Securities Act of 1933 [(1933 Act)], Securities Exchange Act of 1934 [(1934 Act)], 48 Stat. 881 (1934) and continuing through Congress' 1995 passage of the PSLRA.

Under SLUSA, federal court is the exclusive venue for fraud claims 'in connection with the purchase or sale of a covered security' and the statute itself specifically provides for removal of such claims to federal court. The statute was originally enacted in 1998 because heightened pleading requirements in federal securities cases caused a pilgrimage of securities claims to state courts, thus circumventing congressional reforms designed to restrict federal securities claims. (Id. at [p.] 1341; *Dudek v. Prudential Sec., Inc.* [(8th Cir. 2002)] 295 F.3d 875, 877....)" (*Falkowski v. Imation* Corp. (9th Cir. 2002) 309 F.3d 1123, 1128 (Falkowski); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter* (C.D. Cal. 2002) 199 F.Supp.2d 993, 997 [Congress enacted SLUSA "to ensure that litigants do not circumvent the limitations of the [PSLRA] by filing their securities actions in state court"].)



"The testimony before Congress when it inserted the Delaware carve-out into SLUSA suggests that the purpose of [15 U. S.C.] § 77 p(d) was to p reserve state -law actions brought by shareholders against their own corp orations in connection with extraordinary corporate transactions requiring shareholder approval, such as mergers and tender offers , regardless whether the corp orations issued nationally traded securities ." (*Madden v. Cowen & Co.* (9th Cir., Aug. 7, 2009, No. 07- 15900) 2009 U.S. App. LEXIS 17657, *31.)

Appellant Kar was a shareholder who brought a securities fraud

action against his own company as CEO of Appellant ProfitPay. In his

entire career of twenty-four years, this is the first time Appellant Kar

had sensed a fishy situation – suspicious enough to gather other

investors – who realized they were materially misrepresented to under

false pretenses by Defendants Jayesh, Devesh and Vimal. These

investors had invested anywhere between $20,000-$100,000 each, and

there were about 230 investors atleast. Each of the investors' monies

unbeknownst to them was going into a pseudo fund called Defendant

ONRIVA holdings which was a devalued stock at a flailing startup of

Defendant JAFRI. Defendant JAFRI is also part of Monriva Capital

that has created YouTube videos of their several incoming investments

boosting investors' reliance of materially-misrepresented stock value. **4-**

**ER-243-351.**



Further, approximately six-hundred (600) investors had invested in both Defendant ONRIVA and Monriva Capital, and numerous were lured in to invest more in Defendant ONRIVA since Defendant running out of money.

Essentially, what Defendants Shailesh, Jayesh and Vimal Patel were doing was a merger-and-acquisition of Defendant Vajid Jafri's flailing startup, Onriva based in Foster City, California, with Plaintiff ProfitPay (prior PayCertify) that had millions invested for a different purpose.

Appellant ProfitPay and its predecessor, PayCertify (where shareholders had invested) were to be a financial payment intermediary channel for third-party payment transactions. But Defendants Shailesh, Jayesh and Vimal Patel, including the John Doe investors and Shailesh Patel, were falsely misleading investors and making them detrimentally upon misguided statements that stocks were over-valued at $2 per stock when in reality it was cents to a dollar. **4-ER-243-35.**

Defendants Devesh, Jayesh and Vimal Patel, including the John Doe investors and Shailesh Patel were boosting investor confidence and hopes with the belief that the stocks of Onriva with Defendant Jafri were truly at



$2 per share and would quadruple thereafter. However, none of this was true, and the Defendants were aware of that. Feitelberg v. Credit Suisse First Boston LLC (N.D.Cal. Oct. 24, 2003, No. C 03-3451 SC) 2003 U.S. Dist. LEXIS 19116, 2003 WL 22434098, *1, 2.

In 1995, when Congress enacted PSLRA, it was designed to "deter or at least quickly dispose of [securities] suits whose nuisance value outweigh[ed] their merits" by instituting a number of procedural hurdles for securities actions brought under federal law. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006). In response to these new procedural difficulties, "plaintiffs and their representatives began bringing [securities] class actions under state law, often in state court." Id. In an effort to "channel securities fraud litigation away from state-law class actions and into the federal courts" under PSLRA, Congress enacted SLUSA, which precludes certain securities class actions brought under state law. *Proctor v. Vishay Intertechnology Inc.,* 584 F.3d 1208, 1218 (9th Cir.2009). Specifically, "SLUSA bars private plaintiffs from bringing (1) a covered class action (2) based on state law claims (3) alleging that defendant made a misrepresentation or omission or



73

employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." *Freeman Investments, L.P. v. Pacific Life. Ins. Co.,* 704 F.3d 1110, 1114–15 (9th Cir.2013).

When it enacted SLUSA, Congress intended to preempt state securities class actions alleging fraud or manipulation relating to covered securities. *Prager v. Knight/Trimark Group Inc.,* 124 F. Supp.2d 229, 233 (D.N.J. 2000). Its purpose was to "eliminate strike-suits — i.e., suits in which issuers of securities were being accused of defrauding the public by disseminating false prospectuses, tender offers, initial public offerings, proxies, and similar materials." *Burns v. Prudential Securities,* 116 F. Supp.2d 917, 920 (N.D. Ohio 2000). Because case law interpreting SLUSA is limited, courts have looked to Section 10(b) of the Securities Exchange Act of 1934 to interpret SLUSA. See Id., at 923; *Green v. Ameritrade Inc.,* 120 F. Supp.2d 795, 798 (D. Neb. 2000).

This afore-captioned case is similar to the *Hamptons'* case - In Hampton, shareholders of a fund managed by defendants had been informed, via various prospectuses, that "up to 15% of [the fund's] assets "would be invested "in securities and instruments... tied to emerging market



countries." *Here,* Defendants showed false agreement drafts and prospectuses to ProfitPay/PayCertify investors to lure them into making investments in a flailing startup shown as an over-inflated stock value to be generated in the future. Appellants contend in the SAC that Defendants Jayesh et al made misstatements and intentionally with knowledge inflated the company's stock price to ensure that a secondary offering of stock would be successful with Defendant ONRIVA and to increase the returns of the stockholders. 2-ER-61-64; 131-133.

Initially, this case was intended to be a class-action amongst shareholders and investors of ProfitPay and Pay Certify, such as Shailesh Patel and John Does. During the middle of the defendants' motions to dismiss, defendants Jayesh, Vimal and Devesh filed a state case against Appellants Kar and ProfitPay. Thereafter, some of the shareholders and investors filed a state case – still pending – in state court against defendants Jayesh, Vimal and Devesh.

Thus, had the district court allowed leave to amend the securities fraud claim under Fed. *Rul. Civ. Proc. Rul.* 15, the litigants would have **avoided the multiplicity of litigation that the Defendants and shareholders**



**commenced** - after Appellants Kar and ProfitPay via their counsel had initiated in federal CAND lawsuit.

In *Carol Gamble Trust 86 v. E-Rex, Inc.* (9th Cir. 2004) 84 F. App'x 975, the district court erred in applying the PSLRA's heightened pleading requirements to the Shareholders' claim brought under the 1933 Act.

In *Gamble*, the Shareholders' claim for relief alleges that the Defendants sold unregistered securities, i.e., stocks, in violation of sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. § 77(e) and 77e(c). A private right of action for violations of section 5 is authorized by section 12(a)(1) of the 1933 Act. 15 U.S.C. § 77l(a)(1). Since the PSLRA, by its express terms, only applies to actions arising under the 1934 Act, the district court erroneously applied the PSLRA to the Shareholder Kar's claim for relief. See *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir.2002) (holding that the violations of sections 11 and 12 of the 1933 Act are not governed by the PSLRA). **4-ER-243-351.**

The *Gamble* Court also discussed *Eminence*,

"In *Eminence,* we held that a district court's denial of a leave to amend in the PSLRA was an abuse of discretion where the district court failed to "articulate why dismissal should be with



76

prejudice." *Id.* Here, the district court similarly dismissed the Shareholders' complaint without articulating its reasons for denying leave to amend. Such "[a] simple denial of leave to amend without any explanation by the district court is subject to reversal." *Carol Gamble Trust 86 v. E-Rex, Inc.* (9th Cir. 2004) 84 F. App'x 975, 979.

Because the district court did not address whether Shareholder Kar's claim for relief satisfied Rule 9(b), similar to *Gamble*, the Ninth Circuit Court of Appeal must REVERSE and VACATE for a determination on this issue. *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1404-05 (9th Cir.1996).

The district court's failure to allow a heightened pleading under PSLRA or SLUSA –of securities defrauded-investors, including Appellants Kar and ProfitPay – is what was envisioned from the start – then this meritorious case would be at the discovery stage heading to trial. **4-ER-230-245.**

But the district court utterly failed to apply the proper standards – making vague rulings and incorrect statements on the docket. 1-ER-2, lines 19-25; 1-ER- 6 lines 21-27. The district court also erred in denying the Shareholder Kar an opportunity to amend the complaint as to the shareholder claim of relief under securities fraud. 1-ER-2, lines 19-25; 1-ER-6 lines 21-27. Generally, Rule 15 advises that "leave shall be freely given when justice so requires." The district court failed to apply this standard



Fed. *Rul. Civ. Proc. Rul.* 15(a). In the Ninth Circuit, this policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir.2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). In the context of federal securities claims arising under the PSLRA, the courts have held that "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003). Thus, this Ninth Circuit Court of Appeal must reverse and remand on the shareholder cause of action under securities fraud claim pled only once.

=================================================

**III. PSLRA Heightened Pleading with Plausibility of Federal *Rules of Civil Procedure Rule* 9 B could have been met were a second-bite-at-the-apple provided under *Eminence***

=================================================

///

///

RESHMA KAMATH

78

### A.  SEC Rule 10b-5(b) Claim

"Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b-5 prohibit making any material misstatement or omission in connection with the purchase or sale of any security." *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 267 (2014). To prevail on a Rule 10b-5(b) claim, a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.* (internal citations and quotations omitted).

"At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA [Private Securities Litigation Reform Act]." *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 990 (9th Cir. 2009), as amended (Feb. 10, 2009). Under Rule 9(b), in alleging fraud, "the circumstances constituting fraud" must be "state[d] with



79

particularity." Fed. *Rul. Civ. Proc. Rul.* 9(b). *In re Edward D. Jones & Co.* (E.D. Cal., July 8, 2019, No. 2:18-cv-00714-JAM-AC).

The PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

**i. Defendants' Material Misstatements or Omissions**

Under Rule 10b-5(b) it is unlawful for Defendants "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b-5(b). An omitted fact is material if "there is a substantial likelihood that a reasonable [investor] would consider it important." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1333 (2015) (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)). "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made



available." *TSC*, 426 U.S. at 449. The statements in 2-ER-61-64 131-133 were omitted as material facts to reasonable investors listed in 2-ER-61 SAC 141. The same statements the district court cites as not understanding the difference between Defendants hyper-inflating ProfitPay to 83 cents per stock while making reasonable investors put in their monies, whereas over-inflating stock price to $50 per share while selling to Defendant Onriva.

## ii. Defendants' Scienter required the extreme liberality of leave to amend.

Federal securities fraud claims require "scienter" as an essential element. *See In re Silicon Graphics Inc. Securities Litigation v. MeCracken, et al.,* 183 F.3d 970, 975 (9th Cir. 1999).

"Scienter is the mental state embracing intent to deceive, manipulate, or defraud." *Ernst Ernst v. Hochfelder*, 425 U.S. 185, 193-194 n. 12 (1976). Moreover, Congress enacted the SLUSA in response to the PSLRA which requires at a minimum strong inference of deliberate recklessness. *Silicon Graphics Inc.,* 183 F.3d at 977 (emphasis added); *Green,* 120 F. Supp.2d at 798; see also, *Burns,* 116 F. Supp.2d at 923 (stating that the PSLRA heightened the pleading requirements under FED. R. Civ. P. 9(b) so that



allegations of securities fraud must be pled with enough specificity to give rise to a strong inference that the defendant acted with scienter).

To meet the state of mind requirement a complaint must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness," where recklessness still "reflects some degree of intentional or conscious misconduct." *In re Daou Sys., Inc.,* 411 F.3d 1006, 1014-15 (9th Cir. 2005); *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 977 (9th Cir. 1999), as amended (Aug. 4, 1999). In this inquiry, "courts must consider the **complaint in its entirety,** as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, **documents incorporated into the complaint by reference**, and matters of which a court may take judicial notice" to determine "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23 (emphasis in original).

Viewing the matter holistically, *Tellabs*, 551 U.S. at 326, the district court failed to consider the SAC and compending declaration of Kar with exhibits holistically. If the district court had, then the SAC had adequately



pled the strong inference of scienter required, or could have were one more

iteration for amendment offered. Plaintiffs allege that the Individual

Defendants envisioned and implemented false term sheets and asset p

urchase agreements – without the knowledge of then-CEO Kar and the

reasonable investors in 2-ER-75 ⁋141 – for Defendants to improperly

increase stock-based revenue through the alleged ponzi scheme; that

defendant met with Defendant Jafri, owner of Defendant Onriva and

encouraged them to act according to misstatements; that the omitted

were core to ProfitPay's business; and that Appellant Kar publicly

why fee-based platforms may not be suitable to their clients.

Moreover, "allegations of routine corporate objectives such as the

desire to obtain good financing and expand are not, without more, sufficient

to allege scienter; to hold otherwise would support a finding of scienter for

any company that seeks to enhance its business prospects." *In re Rigel*

*Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (holding that "we

will not conclude that there is fraudulent intent merely because a defendant's

compensation was based in part on [achieving key corporate goals].").



In this case, Plaintiffs' allegations are specific and particular, not conclusory and vague, in that they establish defrauding intent. Defendant only gave minimal to no disclosures to the Plaintiffs laying out the benefits and drawbacks of Onriva as a flailing startup – a power-point with few slides at the most, to transition their investment funds into Onriva.

Defendant Jafri was brought into the picture as the CEO of Jafri that would skyrocket the investors' stocks from cents to $2/share.

The mere fact that Defendants financially benefited from certain clients choosing to move into fee-based accounts does not foreclose that the clients may also benefit in the long-run from this new offering and that the company fully believes in the value of its product.

Plaintiffs adequately allege the strong inference of scienter required under Rule 10b-5, PSLRA and SLUSA.

### iii. Shareholders' Reliance

Reliance establishes the "causal connection between the alleged fraud and the securities transaction." *Desai v. Deutsche Bank Sec. Ltd*., 573 F.3d 931, 939 (9th Cir. 2009). "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's



statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011).

Plaintiffs contend they are entitled to a presumption of reliance. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153-54 (1972) (holding that proof of affirmative reliance is not required for alleged violations of Section 10(b) based on omissions of material fact).

However, the Ninth Circuit has held "the Affiliated Ute presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions." *Binder v. Gillespie,* 184 F.3d 1059, 1064 (9th Cir. 1999).

Thus, because the allegations can be characterized primarily as claims of omissions, Plaintiffs are entitled to the presumption of reliance. Plaintiffs have alleged actual reliance on any of the material misstatements. Thus, Plaintiffs have demonstrated reliance and their claims under Rule 10b-5 were pled meeting this prong. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782-83 (9th Cir. 2008) (citing *Silicon Graphics*, 183 F.3d at 983 (9th Cir. 1999)); see also *Glazer Capital Mgmt., LP v. Magistri,* 549 F.3d 736, 743



85

(9th Cir. 2008) (quoting *In re Silicon Graphics*, 183 F.3d at 974*); In re Read-Rite Corp., Sec. Litig.,* 335 F.3d 843, 846 (9th Cir. 2003); *Gompper v. VISX, Inc.,* 298 F.3d 893, 895 (9th Cir. 2002), abrogated on other grounds by *Tellabs*, 551 U.S. at 323; *DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d 385, 388-89 (9th Cir. 2002).

**iv. Shareholders' Loss Causation**

Loss causation, 'i.e., a causal connection between the material misrepresentation and the loss" experienced by the plaintiff, is a necessary element of pleading a securities fraud claim under Section 10(b) of the *Exchange Act. Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). A plaintiff "must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event." *Lloyd v. CVB Fin. Corp*., 811 F.3d 1200, 1209 (9th Cir. 2016). "Typically, 'to satisfy the loss causation requirement, the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff.' " *Nuveen Mun. High Income Opportunity Fund v. City*



*of Alameda,* Cal., 730 F.3d 1111, 1119 (9th Cir. 2013) (quoting *McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 425-26 (3d Cir. 2007).

However, "[d]isclosure of the fraud is not a sine qua non of loss causation" and "loss causation is a 'context-dependent' inquiry as there are an 'infinite variety' of ways for a tort to cause a loss." *Nuveen,* 730 F.3d at 1120; Lloyd, 811 F.3d at 1210 (internal citations omitted). Accordingly, the Ninth Circuit recently clarified that, to "prove loss causation, plaintiffs need only show a causal connection between the fraud and the loss by tracing the loss back to the very facts about which the defendant lied. "Mineworkers' *Pension Scheme v. First Solar Inc.,* 881 F.3d 750, 753 (9th Cir. 2018) (internal citations and quotations omitted).

Plaintiffs sufficiently allege loss causation in more than Defendants' failure to disclose to investors. This is not a typical, stock-drop, "fraud-on-the-market" securities fraud case. Appellants' SAC contains allegations regarding the overall performance of shareholder stock performance, or omissions to disclose any changes to performance based on corrective disclosures of term-sheet, asset purchase agreement, or ProfitPay's shareholder monies to purchase over-inflated Onriva. The losses stated are



per share valuation that was over-inflated for millions for the investors collectively, and the additional, higher fees Plaintiffs have paid via virtue of transitioning from PayCertify payment channels to Onriva, a flailing startup. But, as discussed above, there is an actionable omission related to the increase in fees, overvaluation of stocks, and their potential impact on Plaintiffs' investments, because information regarding the fees was fully disclosed to the Plaintiffs. Therefore, there is no causal connection between any actionable omission and the loss. Moreover, Plaintiffs' efforts to prove loss causation in arguing that they would not have agreed to switch accounts but for Defendants' withholding material information is satisfied, because it focuses on loss causation. *Nuveen*, 730 F.3d at 1121. Thus, Plaintiffs have demonstrated loss causation and their claims under Rule 10b-5 fail.

===============================================

## IV. Defendants' Scheme Liability for a Ponzi Scheme were well-pled

===============================================

Plaintiffs also bring a Rule 10b-5(a) and (c) "scheme liability" claim. Under Rules 10b-5(a) and (c) it is unlawful for a person to use a "device,



scheme, or artifice to defraud," or engage in "any act, practice, or course of business which operates or would operate as a fraud or deceit," in connection with the purchase or sale of a security. 17 C.F.R. § 240.10b-5.

"[T]he same set of facts may give rise both to a violation of subsection (b) and subsections (a) and/or (c) if [a] plaintiff alleges 'that the defendants undertook a deceptive scheme or course of conduct that went beyond the misrepresentations.'" *S.E.C. v. Loomis*, 969 F. Supp. 2d 1226, 1237 (E.D. Cal. 2013) (quoting *In re Alstom SA,* 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005)). In order to state a claim under Rules 10b-5(a) or (c), a plaintiff must allege a "device, scheme, or artifice to defraud," or an "act, practice, or course of business which would operate as a fraud," in addition to the standard elements of a Section 10(b) violation: (1) scienter; (2) connection with the purchase or sale of securities; (3) reliance; (4) economic loss; and (5) loss causation. See *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008).

Plaintiffs discuss a Ponzi scheme that Defendants generated amongst themselves. In *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940 (9th Cir. 2005), the plaintiffs appealed the district court's decision



89

dismissing its complaint with prejudice for failure to state a claim. The district court found that the plaintiffs failed to  adequately plead that the notice statement that they relied upon to buy stock in Purely Cotton, Inc . ("PCI") was a material misrepresentation. *Id.* at 945. The district court also found that the plaintiffs' complaint did not meet the PSLRA's p leading standards for scienter.  The Ninth Circuit reversed, holding that the district court erred in concluding that the contested statement was immaterial and that the plaintiffs did not adequately plead scienter. *Id.* at 949, 951. The plaintiffs' claims arose from a $10 million purchase of PCI stock in December 1999.  Id. at 944.  In January 1999, Schroders & Co. helped PCI arrange a private placement of $25 million of its stock by creating a confidential offering memorandum (the "Memorandum"). *Id.* at 944.  The plaintiffs alleged that a third-party company, UAE, agreed to buy 98% of the offering and directors and/or officers of Schroders agreed to buy the remaining 2%. *Id.* at 945. In September 1999, PCI asked Schroders for more copies of the Memorandum and the Schroders director in charge of the offering attached a notice to the Memorandum stating in relevant part that "[t]his document has not been updated or amended to reflect any events that



90

have occurred since January 1999. As such, it does not reflect the fact that the above-mentioned $25 million private equity fund raising has been completed." *Id.* (emphasis omitted). The plaintiffs contended that the notice "implie[d] that the proceeds of the initial $25 million sale had been received by PCI, but that the Memorandum had not yet been updated to reflect this additional capital." *Id.* At the time the notice was written, UAE and defendants had paid PCI less than $2 million. Id. The plaintiffs also alleged "that additional payments on UAE's balance were conditional on UAE's approval of a PCI business plan and a new [CEO]," and that the defendant directors and/or officers were subject to the same payment arrangement. *Id..* Therefore, the plaintiffs claimed, Schroders knew the offering was incomplete when the notice was attached to the Memorandum. *Id..* The Ninth Circuit concluded that the plaintiffs "sufficiently pled materiality by raising a substantial likelihood that a reasonable investor would not have purchased $10 million worth of PCI stock after learning that the company had $25 million less in cash than [the investor] was led to believe." *Id.* at 946-47. **4-ER-52-150.**



Similarly, Appellants ProfitPay via counsel contend that the ***Livid Holdings Ltd. Situation is identical to the current one.*** The Ninth Circuit must follow this reasoning that none of the shareholders of PayCertify, Inc. d/b/a Appellant ProfitPay would **not** have invested in Appellant ProfitPay stock as SERIES-1, SERIES-2, and SAFEA/B if they had known at the outset from Defendants that ProfitPay stocks were less than the eighty-three cents, but in reality, six cents per stock. 2-ER-74-75; 131-133.

Further, Appellants ProfitPay via counsel contend that shareholders of PayCertify, Inc. d/b/a Appellant ProfitPay would not have invested if they had known that Defendants Jayesh, Vimal and Devesh were only seeking investor monies to re-invest in Defendant Onriva, a flailing startup from Foster City at $10 per share rather than $50 per share. 2-ER-74-75; 131-133.

=====================================================

## <u>CONCLUSION</u>

=====================================================

Appellants ' allegations  met or *would have met* the heightened  p leading  standard  of *Federal Rule of Civil Procedure Rule* 9(b), PSLRA and SEC Act Rule 10b-5(b) violation - were leave to amend be liberally

RESHMA KAMATH

and freely granted for a second-bite-at-the-apple under the securities

fraud claim under *Federal Rule of Civil Procedure Rule* 15 with

additional proffered evidence an actionable misstatement or omission, a

strong inference of scienter, establishing reliance, and demonstrating

loss causation.

Thus, Appellants' SEC Rule 10b-5(b) must be allowed amendment

based on equity to shareholders. **4-ER-253-351.**

This Ninth Circuit Appellate Court must reverse the matter atleast

to the securities fraud claim for a second bite at the apple.

**DATED: March 01, 2024**


**LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath,
Counsel for Appellants & Plaintiffs TANMAY KAR, AN
INDIVIDUAL; PROFITPAY TECHNOLOGIES, INC., A
CORPORATION



## CERTIFICATE OF COMPLIANCE

I, Reshma Kamath, declare:

1. I am the counsel for Plaintiffs and Appellants. I'm not a party to the action.

2. If I were to on any factual matters stated herein, I could and would truthfully testify under oath.

3. I'm duly admitted to appear before this Honorable Appellate Court of Ninth Circuit Court of Appeals, and a member of the State Bar of California in good standing.

4. I prepared the afore-stated opening brief. I submit this declaration to attest to the certificate of compliance for the word count.

5. Pursuant to Fed. *Rul. Appell. Proc. Rul.* 32(g)(1), I hereby certify that the foregoing motion complies with the type-volume limitation in Fed. *Rul. Appell. Proc. Rul.* 27(d)(2)(A). According to the Microsoft-Word function, the opening brief contains **14,000** words and was prepared in a proportionally spaced typeface using Times New Roman in 14-point size.

///

I declare under penalty of perjury that the foregoing is true and



correct under the laws of the State of California, and the United States

of America.

///

**DATED: March 01, 2024**

**LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath,
Counsel for Appellants & Plaintiffs TANMAY KAR, AN INDIVIDUAL; PROFITPAY
TECHNOLOGIES, INC., A CORPORATION

**RESHMA KAMATH**
CAL. BAR NUMBER 333800
LAW OFFICE OF RESHMA KAMATH
700 EL CAMINO REAL SUITE 120, #1084, MENLO PARK, CA
94025 PHONE: 650 257 0719 | E-MAIL:
RESHMAKAMATH2021@GMAIL.COM



## CERTIFICATE OF SERVICE

I hereby certify that on March 01, 2024, I electronically filed the following:

## APPELLANTS' OPENING BRIEF

## INDEX VOLUME FOR EXCERPTS OF RECORD VOLUMES 1-5 IN SUPPORT OF APPELLANTS' OPENING BRIEF

via the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system and paper copies will be mailed to those indicated as non-registered participants on March 01, or 02, 2024. I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

**DATED: March 01, 2024**

**LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath,
Counsel for Appellants & Plaintiffs TANMAY KAR, AN INDIVIDUAL; PROFITPAY TECHNOLOGIES, INC., A CORPORATION



96

**RESHMA KAMATH**
CAL. BAR NUMBER 333800
LAW OFFICE OF RESHMA KAMATH
700 EL CAMINO REAL SUITE 120, #1084, MENLO PARK, CA
94025 PHONE: 650 257 0719 | E-MAIL:
RESHMAKAMATH2021@GMAIL.COM



<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 29, 2024, I electronically filed the following:

**EXCERPTS OF RECORD VOLUME 1 OF 5 IN SUPPORT OF**

**APPELLANTS' OPENING BRIEF**

**EXCERPTS OF RECORD VOLUME 2 OF 5 IN SUPPORT OF**

**APPELLANTS' OPENING BRIEF**

**EXCERPTS OF RECORD VOLUME 3 OF 5 IN SUPPORT OF**

**APPELLANTS' OPENING BRIEF**

**EXCERPTS OF RECORD VOLUME 4 OF 5 IN SUPPORT OF**

**APPELLANTS' OPENING BRIEF**

**EXCERPTS OF RECORD VOLUME 5 OF 5 IN SUPPORT OF**

**APPELLANTS' OPENING BRIEF**

via the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system and paper copies will be mailed to those indicated as non-registered participants on March 01, 2024. I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.



**DATED: March 01, 2024**

**LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath,
Counsel for Appellants & Plaintiffs TANMAY KAR, AN INDIVIDUAL; PROFITPAY TECHNOLOGIES, INC., A CORPORATION

**RESHMA KAMATH**
CAL. BAR NUMBER 333800
LAW OFFICE OF RESHMA KAMATH

